DANIEL M. ORTNER (California State Bar No. 329866)
dortner@pacificlegal.org
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

GABRIEL Z. WALTERS (District of Columbia Bar No. 1019272)*
gabe.walters@thefire.org
JEFFREY D. ZEMAN (Pennsylvania Bar No. 328570)*
jeff.zeman@thefire.org
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Telephone: (215) 717-3473

*Attorneys for Plaintiffs*
**Pro Hac Vice* Motions Forthcoming*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO FLORES;<br><br>DANIEL FLORES;<br><br>JULIETTE COLUNGA; and<br><br>YOUNG AMERICANS FOR FREEDOM AT CLOVIS COMMUNITY COLLEGE,<br><br>Plaintiffs,<br>v.<br><br>DR. LORI BENNETT, in her individual and official capacities as President of Clovis Community College;<br><br>MARCO J. DE LA GARZA, in his individual and official capacities as Vice President of Student Services at Clovis Community College;<br><br>GURDEEP HÉBERT, in her individual and official capacities as Dean of Student Services at Clovis Community College; and | Civil Action No.<br>_____<br><br>**VERIFIED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS**<br><br>**JURY TRIAL DEMANDED**<br><br>Date: T.B.D.<br>Time: T.B.D.<br>Judge: T.B.D. |

PATRICK STUMPF, in his individual and official capacities as Senior Program Specialist at Clovis Community College,

Defendants.

## INTRODUCTION

1.     Administrators of public colleges cannot ban a student group's flyers because some found the message inappropriate or offensive. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989).

2.     Yet that is exactly what administrators of Clovis Community College did when they ordered Plaintiffs' flyers to be taken down and relegated others to a remote part of campus students rarely visit. Plaintiffs—students and founding members of Clovis's chapter of conservative student organization Young Americans for Freedom (YAF-Clovis)—bring this civil rights lawsuit to hold Clovis administrators accountable for their blatant viewpoint discrimination and to enjoin enforcement of Clovis's policy requiring prior administrative approval for flyers.

3.     In November 2021, Plaintiffs Alejandro Flores, Daniel Flores, and Juliette Colunga obtained approval to post anti-communist flyers (the Freedom Week Flyers) to bulletin boards inside campus buildings. After receiving complaints that the flyers made "several people . . . uncomfortable," Clovis President Dr. Lori Bennett directed other administrators to take down the Freedom Week Flyers and fabricated a pretext, saying, "If you need a reason, you can let [the students] know that [Vice President of Student Services] Marco [De La Garza] and I agreed they aren't club announcements."

4.     Dean of Student Services Gurdeep Hébert later used the same pretext to reject Plaintiffs' application to post flyers advocating a pro-life viewpoint (the Pro-Life Flyers) on the day the Supreme Court heard oral argument in *Dobbs v. Jackson Women's Health Organization*. Instead of permitting Plaintiffs to use the highly trafficked bulletin boards inside campus

buildings, Defendants banished them to a remote, infrequently visited location outdoors, the so-called "Free Speech Kiosk." The Kiosk, a small box covered in rotting wood planks, sits at the edge of a walkway students virtually never use because it does not lead to any building entrances or parking lots.

5.      Clovis Community College maintains a "Poster/Flyer Instructions" Policy (the Flyer Policy) that unconstitutionally prohibits flyers "with inappropriate or offense [sic] language or themes." But contrary to President Bennett's pretextual reason for removing Plaintiffs' flyers, neither the Flyer Policy nor Clovis's standard practice requires that student flyers must announce club meetings or events.

6.      The Flyer Policy is facially unconstitutional for four reasons. *First*, it operates as a prior restraint against protected student speech. *Second*, it bans speech on the basis of subjective "offense" and unreasonably fails to define or provide any objective standards as to what constitutes "inappropriate or offens[ive] language or themes." *Third*, it is unconstitutionally vague because a person of ordinary intelligence is left to guess at what is meant by "posters that contain inappropriate or offens[ive] language or themes" and leaves such determinations to the arbitrary enforcement of Defendants in their unfettered discretion. *Fourth*, it is unconstitutionally overbroad because a substantial number of its applications—like the censorship of Plaintiffs' flyers—violate the First Amendment.

VERIFIED COMPLAINT                                3
FOR CIVIL RIGHTS VIOLATIONS

7.      Plaintiffs wish to continue to post flyers advocating their political viewpoints in the future—for example, during Freedom Week, an annual anti-communist awareness campaign to be held November 7–12, 2022. However, Clovis's enforcement of its Flyer Policy's content-based restrictions has chilled Plaintiffs' speech because Plaintiffs cannot know whether or what Defendants will allow them to post.

8.      The Flyer Policy is also unconstitutional as applied to Plaintiffs' speech because it discriminates against their viewpoint in a public forum open to students.

9.      Plaintiffs accordingly bring this civil rights lawsuit seeking declaratory and injunctive relief, damages including punitive damages, and attorneys' fees to vindicate their rights under the First and Fourteenth Amendments.

10.      It is clearly established that public colleges cannot suppress student speech in a public forum because of the viewpoint the speech expresses. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 836 (1995); *Widmar v. Vincent*, 454 U.S. 263, 277 (1981). In light of this longstanding precedent, no reasonable public college administrator would deny students the right to hang flyers on the basis of viewpoint.

11.      In fact, internal communications between Defendants make clear they *knew* their actions implicated Plaintiffs' rights to free speech and that Defendants fabricated a pretext for removing and rejecting Plaintiffs' flyers to hide their blatant viewpoint discrimination.

12.      Not only must this Court require Clovis Community College to change its policies to prevent future violations of students' expressive freedoms, but it must also hold Defendants accountable for their willful deprivation of Plaintiffs' First Amendment rights.

**JURISDICTION**

13.      This action arises under the First and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

14.      Plaintiffs seek declaratory and injunctive relief declaring Clovis Community College's Flyer Policy unconstitutional under the First and Fourteenth Amendments and enjoining its enforcement. Plaintiffs also seek compensatory and punitive damages against

VERIFIED COMPLAINT                                4
FOR CIVIL RIGHTS VIOLATIONS

Defendants in their individual capacities for knowingly and willfully violating Plaintiffs' clearly established rights.

15.     This Court has original jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

**VENUE**

16.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and Local Civil Rule 120(d) because at least one Defendant resides within the Fresno Division of the Eastern District of California and all Defendants reside in the state of California.

17.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) and Local Civil Rule 120(d) because a substantial part of the events giving rise to Plaintiffs' claims occurred within the Fresno Division of the Eastern District of California.

**THE PARTIES**

**Plaintiffs**

18.     Plaintiff Alejandro Flores is a resident of Fresno, California. He is a student at Clovis Community College who founded YAF-Clovis. As then-president of YAF-Clovis, Alejandro obtained approval to post the Freedom Week Flyers on the bulletin boards inside the Academic Centers. He, along with Juliette, created the Pro-Life Flyers and was denied approval to post them on the bulletin boards inside the Academic Centers.

19.     Plaintiff Daniel Flores is a resident of Fresno, California. He is a student at Clovis Community College and an officer of YAF-Clovis. Daniel was an active member of YAF-Clovis when Defendants removed the Freedom Week Flyers from the bulletin boards inside the Academic Centers. He and Alejandro waited on campus for hours seeking approval to post the Pro-Life Flyers on the bulletin boards inside the Academic Centers.

20.     Plaintiff Juliette Colunga is a resident of Clovis, California. She is a student at Clovis Community College and the incoming president of YAF-Clovis. Juliette was an active member of YAF-Clovis when Defendants removed the Freedom Week Flyers from the bulletin boards inside the Academic Centers. She, along with Alejandro, created the Pro-Life Flyers.

VERIFIED COMPLAINT
FOR CIVIL RIGHTS VIOLATIONS

5

21.    Plaintiff YAF-Clovis has been a recognized student organization at Clovis Community College since 2019.

**Defendants**

22.    Defendant Dr. Lori Bennett is the President of Clovis Community College. She has been President since July 2016. In this role, President Bennett is responsible for generally overseeing the operation and policies of Clovis Community College, including the maintenance and enforcement of the Flyer Policy. President Bennett made the decision to remove the Freedom Week Flyers in violation of Plaintiffs' clearly established First Amendment rights to free speech. She also supplied Vice President De La Garza and Dean Hébert a pretext to hide their viewpoint-based decision to remove the Freedom Week Flyers, which Hébert later used to deny Plaintiffs' application to post their Pro-Life Flyers. She is sued in her official capacity for declaratory and prospective injunctive relief and in her individual capacity for money damages, including punitive damages.

23.    Defendant Marco J. De La Garza is the Vice President of Student Services at Clovis Community College. In this role, Vice President De La Garza is responsible for overseeing the operation of the Student Services Division at Clovis and ensuring regulatory and legal compliance. His duties include maintaining and enforcing student organization policies, including the Flyer Policy. He participated in the decision to remove the Freedom Week Flyers in violation of Plaintiffs' clearly established First Amendment rights to free speech. He suggested that Defendants should amend the Flyer Policy because its current language permitted Plaintiffs to express a viewpoint that made others "uncomfortable." He is sued in his official capacity for declaratory and prospective injunctive relief and in his individual capacity for money damages, including punitive damages.

24.    Defendant Gurdeep Hébert is the Dean of Student Services at Clovis Community College. In this role, Dean Hébert is responsible for overseeing outreach, student success, and student activities within Student Services, including enforcement of the unconstitutional Flyer Policy. Dean Hébert participated in the decision to remove the Freedom Week Flyers. She effectuated President Bennett's decision to remove Plaintiffs' Freedom Week Flyers by ordering

VERIFIED COMPLAINT                          6
FOR CIVIL RIGHTS VIOLATIONS

Defendant Stumpf to take the flyers down and used the pretext President Bennett provided her to deny Plaintiffs' application to post the Pro-Life Flyers on the indoor bulletin boards of the Academic Centers. She is sued in her official capacity for declaratory and prospective injunctive relief and in her individual capacity for money damages, including punitive damages.

25.     Defendant Patrick Stumpf is a Senior Program Specialist for Student Activities at Clovis Community College. In this role, Defendant Stumpf is responsible for enforcing the Flyer Policy, and is in charge of the Student Center flyer approval process. He initially approved the Freedom Week Flyers before suggesting to other administrators that the Flyer Policy's ban on "inappropriate" or "offens[ive]" speech could serve as a justification for their removal. After indicating that he would "gladly" remove the Freedom Week Flyers because they made "several people . . . uncomfortable," Stumpf directed Student Center staff to remove all of Plaintiffs' flyers upon receiving President Bennett's order from Dean Hébert. He is sued in his official capacity for declaratory and prospective injunctive relief and in his individual capacity for money damages, including punitive damages.

26.     President Bennett supervises Vice President De La Garza, who in turn supervises Dean Hébert, who in turn supervises Specialist Stumpf.

27.     President Bennett ordered the removal of the Freedom Week Flyers in consultation and agreement with Vice President De La Garza. President Bennett ordered Dean Hébert to remove the flyers, and Dean Hébert, in turn, ordered Specialist Stumpf to remove them. Stumpf then ordered student workers to remove the flyers.

28.     Each Defendant is personally responsible for the constitutional violations alleged.

29.     At all relevant times, Defendants were acting under the color of state law.

## FACTUAL ALLEGATIONS

***Plaintiffs Created a Student Chapter of Young Americans for Freedom at Clovis to Express Their Conservative Views.***

30.     Plaintiff Alejandro Flores grew up in Fresno, California. He attends Clovis Community College and is planning to pursue a law degree from an accredited law school.

VERIFIED COMPLAINT                          7
FOR CIVIL RIGHTS VIOLATIONS

31.     Alejandro developed his conservative political beliefs through the lens of his family's faith. Alejandro's parents were always involved in the local Catholic diocese and they helped found the first local, Spanish-language, Catholic radio station in the Fresno area.

32.     Alejandro's faith drew him to the conservative values of Young Americans for Freedom.

33.     Alejandro founded YAF-Clovis both to find like-minded students on a campus that he believes is dominated by liberal political views and to promote his own conservative political views to his peers.

34.     Plaintiff Daniel Flores is a cousin of Plaintiff Alejandro Flores.

35.     Daniel was born in Fresno, California, and lived there until he was seven years old before returning for college.

36.     Daniel is pursuing a major in business administration at Clovis Community College in pursuit of a bachelor's degree from an accredited university.

37.     Daniel supports YAF-Clovis because of his belief in the free market and his belief that success is the result of hard work.

38.     At the suggestion of Alejandro, Daniel first joined YAF-Clovis to work on the Young America's Foundation 9/11 Never Forget Project.

39.     Plaintiff Juliette Colunga grew up in the Fresno area.

40.     Juliette attends Clovis Community College to earn credits toward a bachelor's degree from an accredited university.

41.     Juliette was the president of a Young Americans for Freedom chapter at her high school, Buchanan High School, which led her to joining YAF-Clovis.

42.     Juliette believes in what she identifies as YAF-Clovis's ideological commitments: free speech, free markets, and a strong national defense.

43.     In order to promote their conservative viewpoints and recruit new members to YAF-Clovis, Plaintiffs create and post flyers on campus for other students to see.

VERIFIED COMPLAINT                    8
FOR CIVIL RIGHTS VIOLATIONS

44. YAF-Clovis is a student chapter of Young Americans for Freedom, which is a project of the national advocacy group Young America's Foundation. According to the Young America's Foundation mission statement, it advocates for "individual freedom, a strong national defense, free enterprise, and traditional values." Young Americans for Freedom chapters are present at colleges and high schools across the country. YAF-Clovis promotes these same values by hosting conservative speakers on campus and participating in outreach initiatives among fellow students on campus.

45. YAF-Clovis regularly receives materials, including flyers, from Young America's Foundation for campus displays.

***Defendants Require Preapproval of Student Flyers and Ban "Inappropriate" or "Offens[ive]" Flyers.***

46. Clovis Community College is a community college located in Fresno, California, with approximately 7,386 enrolled students as of the 2022 spring semester, according to its website.

47. Clovis Community College's campus has two main academic buildings in which students attend class: Academic Center One and Academic Center Two (the Academic Centers).

48. Clovis Community College has mounted bulletin boards along certain hallways inside both Academic Centers.

49. Clovis Community College requires preapproval of student flyers. Under this process, students bring copies of flyers to the Student Center, where staff review the flyers and stamp them for approval before students may hang them on indoor bulletin boards and outdoor kiosks.

50. In Alejandro and Daniel's experience, Student Center staff review and approve flyers within minutes while students wait.

51. Alejandro, Daniel, and Juliette are not aware of the Student Center ever denying any other student groups approval to post flyers on campus.

VERIFIED COMPLAINT                                        9
FOR CIVIL RIGHTS VIOLATIONS

52.     Clovis Community College's Flyer Policy limits individual students, groups, and clubs to only hanging flyers upon the indoor bulletin boards of the Academic Centers and "permitted outdoor kiosks."

53.     A copy of the current Flyer Policy is reproduced below:

CLOVIS COMMUNITY COLLEGE

Poster/Flyer Instructions:

(Revised September 2018)

**Posting instructions:**

- Groups/individuals/clubs can post up to 25 posters.
- Posters are to be posted in appropriate indoor poster boards with 3-4 tacks (two at the top corners of the poster and one to two at the bottom).
- Posters can also be posted on permitted outside kiosks.
- Posters should never overlap one another and should be posted at least two to three finger lengths across.
- Posters need to be in a straight and upright position.

**Posting Information:**

- All posters not bearing the Clovis Community Logo or in the provided Clovis Community College Template (i.e. posters not from a College Department or Division) **must be approved and stamped by the Clovis Community College Student Center Staff.** Failure to do so will result in unapproved/unstamped flyers being removed and thrown away.
- Posters with inappropriate or offense language or themes are not permitted and will not be approved.
- Posters posted anywhere other than designated areas will be removed.
- Posters with unapproved (post approval) writing will be removed.
- Damaged posters will be removed.

54.     Nothing in the Flyer Policy states that only "club announcements" will be allowed.

VERIFIED COMPLAINT                           10
FOR CIVIL RIGHTS VIOLATIONS

55.     The Flyer Policy does not offer any definition of "inappropriate or offens[ive] language or themes."

56.     Neither does the Flyer Policy provide any guidance whatsoever to administrators to determine whether the "language or themes" of student flyers are "inappropriate or offens[ive]."

57.     The rule against "inappropriate or offens[ive] language or themes" is the only enumerated basis upon which Student Center Staff may reject a student-submitted flyer.

***Defendants Approved and Then Removed Plaintiffs' Flyers Because of Their Viewpoint.***

58.     In November 2021, Plaintiffs obtained three flyer designs from Young America's Foundation as part of an annual campaign to raise awareness about the harms caused by communist regimes around the world, called Freedom Week (the Freedom Week Flyers).



59.     Alejandro submitted the Freedom Week Flyers to Clovis Community College Student Center Staff for approval.

60.     Within minutes of Alejandro's submission, Defendant Specialist Stumpf approved the Freedom Week Flyers and granted Plaintiffs permission to post them on the indoor bulletin boards of the Academic Centers.

61.     Plaintiffs then posted the Freedom Week Flyers on the indoor bulletin boards of the Academic Centers, where their peers would be able to see them while walking to and from class.

62.    Alejandro took photographs of some of the Freedom Week Flyers while they were hanging on the bulletin boards in the Academic Centers. True and correct copies of his photographs of the Freedom Week Flyers are attached as Exhibits A, B, and C to this Verified Complaint.

63.    On Monday, November 8, 2021, while the Freedom Week Flyers were still hanging on the walls of the Academic Centers, President Bennett, Vice President De La Garza, and Specialist Stumpf received an email from another staff member claiming that the Flyers made "several people . . . very uncomfortable" and that one person said they would file a harassment claim if Defendants didn't take the flyers down.

64.    This report of alleged complaints set off a flurry of emails that same day among Defendants about how to remove the Freedom Week Flyers.

65.    Despite acknowledging to another staff member that removing the flyers because of their viewpoint implicated students' free speech rights—which he unreasonably mischaracterized as "a gray area"—Specialist Stumpf responded that he would "gladly" take down the Freedom Week Flyers on further instructions from his superiors.

66.    Vice President De La Garza responded by indicating that Defendants should review the guidelines that permitted Plaintiffs to post the Freedom Week Flyers.

67.    Specialist Stumpf agreed and then offered the Flyer Policy's prohibition of "inappropriate or offens[ive] language or themes" as a justification for removing the Freedom Week Flyers. He suggested that, under that provision, the Freedom Week Flyers should not have been approved in the first place. But he added: "Since it is a political club, we have allowed political type posters from the club before."

68.    Late that day, Dean Hébert asked Specialist Stumpf about the Freedom Week Flyers: "Did we approve these?"

69.    Specialist Stumpf replied to Dean Hébert later that evening: "Yes . . . they are the same ones we had approved a couple years ago. They come from the national student organization and we were on the fence about it. I wish we would have held off and we sent to you first."

70.     On Friday, November 12, 2021, four days after receiving the complaint about the Freedom Week Flyers, President Bennett ordered Vice President De La Garza and Dean Hébert to remove the Flyers from the indoor bulletin boards of the Academic Centers.

71.     President Bennett provided De La Garza and Hébert a pretext to give Plaintiffs in order to hide Defendants' viewpoint discrimination: "If you need a reason, you can let them know that Marco [De La Garza] and I agreed they aren't club announcements."

72.     There is no rule or policy of Clovis Community College, including the Flyer Policy, that requires student flyers to contain "club announcements." Nor was there, before Bennett's order, any consistent pattern or practice at Clovis Community College to prohibit or remove student flyers that "aren't club announcements."

73.     On November 14, 2021, Dean Hébert ordered Specialist Stumpf to remove the Freedom Week Flyers from the indoor bulletin boards of the Academic Centers.

74.     The following morning Specialist Stumpf replied, indicating he would have student workers take the Freedom Week Flyers down that day.

75.     Defendants did not notify Plaintiffs of President Bennett's decision to remove the Freedom Week Flyers.

76.     Plaintiffs only later discovered, when a faculty member asked them if YAF-Clovis students had taken the Freedom Week Flyers down, that all of the Flyers had been removed from the halls of the Academic Centers.

77.     Dean Hébert sent President Bennett's pretextual justification for removing the Freedom Week Flyers to Specialist Stumpf and directed him to keep it a secret: "Between you and me. Please don't share this email. Flyers need to come down per administration."

78.     In summary, President Bennett's November 12, 2021, decision to remove the Freedom Week Flyers was the result of the discussion that started on November 8, 2021, when Defendants received a viewpoint-based complaint about the content of Plaintiffs' Freedom Week Flyers. The reason Bennett offered Vice President De La Garza and Dean Hébert—that the flyers "aren't club announcements"—was a pretextual, post-hoc justification for the flyers' removal.

VERIFIED COMPLAINT                      13
FOR CIVIL RIGHTS VIOLATIONS

***Defendants Banished Additional Flyers to a "Free Speech Kiosk" Because of Their Viewpoint.***

79.    This was not the only time Defendants used the pretextual justification of flyers not being a "club announcement" to discriminate against Plaintiffs' speech.

80.    In late November of 2021, Plaintiffs Alejandro Flores, Daniel Flores, and Juliette Colunga created a new set of five flyers, depicted below, conveying their pro-life viewpoint (the Pro-Life Flyers), in anticipation of the highly controversial U.S. Supreme Court case of *Dobbs v. Jackson Women's Health Organization* on the constitutionality of Mississippi's fifteen-week ban on abortions.



81.    Plaintiffs intended to promote their pro-life viewpoint to their peers on campus contemporaneously with the news cycle around the Supreme Court's oral argument in *Dobbs*, scheduled for December 1, 2021.

82.    The day of the oral argument, Plaintiffs sought approval from Specialist Stumpf and Dean Hébert to post the Pro-Life Flyers on the indoor bulletin boards of the Academic Centers.

83.    Alejandro and Daniel brought copies of the Pro-Life Flyers to the Student Center for approval.

84.    Based on prior experience on multiple occasions, Alejandro and Daniel expected that Student Center staff would approve student flyers within minutes while they waited.

85.    However, on December 1, 2021, Alejandro and Daniel remained on campus for nearly nine hours awaiting approval of the Pro-Life Flyers. Ultimately, they left campus without receiving an approval or denial.

VERIFIED COMPLAINT                              14
FOR CIVIL RIGHTS VIOLATIONS

86.    That day, Alejandro emailed Dean Hébert to ask about the status of the Pro-Life Flyers. He emphasized Plaintiffs' intent to timely promote their viewpoint to their peers given that the *Dobbs* oral argument had occurred earlier that day.

87.    The next day, on December 2, 2021, Dean Hébert replied to Alejandro's email, denying Plaintiffs' request to place the Pro-Life Flyers on the indoor bulletin boards of the Academic Centers without explanation.

88.    Dean Hébert advised Alejandro that she would not permit Plaintiffs to post the Pro-Life Flyers inside the Academic Centers, but they could instead post the flyers on an outdoor "Free Speech Kiosk."

89.    The Free Speech Kiosk is a four-sided rectangular box located on the edge of a walkway seldom, if ever, used by Clovis Community College students.

90.    Under Clovis Community College's COVID-19 policies, students are permitted to enter and exit both of the Academic Centers through only one door in each building.

91.    Neither of the doors available to students to access the Academic Centers is accessible via the walkway upon which the Free Speech Kiosk sits.

92.    Students walking from the entrance of one Academic Center to the other do not pass by the Free Speech Kiosk.

93.    There are no other buildings in close proximity to the Free Speech Kiosk, and the college's parking lots are located at the other ends of campus.

94.    Consequently, if the flyers were posted only on the Free Speech Kiosk, it would be unlikely that students would ever see Plaintiffs' flyers.

95.    Because flyers on the Free Speech Kiosk are unlikely to reach an intended audience, Clovis Community College students do not regularly use the Kiosk.

96.    On December 3, 2021, Alejandro sent Dean Hébert an email asking why she had denied Plaintiffs' request to post the Pro-Life Flyers on the indoor bulletin boards of the Academic Centers.

VERIFIED COMPLAINT                           15
FOR CIVIL RIGHTS VIOLATIONS

97.     Seven days later, on December 10, 2021, Dean Hébert finally replied that Clovis Community College generally permits only the posting of announcements regarding groups, events, and services on interior hallways.

98.     In other words, Dean Hébert's December 10, 2021, email repeated the pretextual, post-hoc justification President Bennett created on November 12, 2021, for removing the Freedom Week flyers.

99.     Other students and clubs regularly post flyers with political and social commentary or themes on the indoor bulletin boards of the Academic Centers. Defendants do not require those students or groups to take their flyers down and only post them to the Free Speech Kiosk.

***Defendants Discussed Revising the Flyer Policy, But the Policy Remains in Place.***

100.     During the course of their discussions regarding the Freedom Week Flyers, Defendants proposed revising the Flyer Policy in response to the complaints they had received about the flyers' content.

101.     On November 8, 2021, Vice President De La Garza's immediate response to the complaints was to suggest that he, Dean Hébert, and Specialist Stumpf meet to review the Flyer Policy.

102.     On November 12, 2021, when President Bennett ordered the removal of the Freedom Week Flyers from the Academic Buildings, she also advised that she, Vice President De La Garza, and Dean Hébert could discuss new rules the following week.

103.     There is no evidence that Defendants intended to revise the Flyer Policy before receiving complaints about Plaintiffs' Freedom Week Flyers.

104.     Similarly, there is no evidence that Defendants intend to revise the Flyer Policy to *permit* Plaintiffs' flyers.

105.     To the contrary, the context in which Defendants discussed revising the Flyer Policy suggests that, if anything, Defendants desired to craft a policy that would *prohibit* Plaintiffs' Freedom Week Flyers.

106.     The Flyer Policy is still in effect as of the date of this filing.

VERIFIED COMPLAINT                    16
FOR CIVIL RIGHTS VIOLATIONS

***Defendants' Actions Deprived Plaintiffs of Their Rights and Their Injury Is Ongoing.***

107.    As a direct and proximate cause of Defendants removing Plaintiffs' Freedom Week Flyers from the bulletin boards and banishing Plaintiffs' Pro-Life Flyers to the isolated Free Speech Kiosk, Plaintiffs have suffered and continue to suffer irreparable injury, including being deprived of their constitutional rights to freedom of speech and due process.

108.    Plaintiffs intend to post the Freedom Week Flyers during the fall semester's Freedom Week from November 7–12, 2022 and beyond.

109.    Plaintiffs intend to post the Pro-Life Flyers and flyers containing similar political and social messages during the 2022 fall semester, which began on August 8, 2022, and beyond.

110.    Although Plaintiffs originally intended to post the Pro-Life Flyers contemporaneously with the news cycle surrounding the December 1, 2021, arguments in *Dobbs v. Jackson Women's Health Organization*, the text and images of the Pro-Life Flyers are not specific to that case or that oral argument date. The debate over abortion continues in public discourse across the country, and Plaintiffs intend to post the Pro-Life Flyers on the indoor bulletin boards of the Academic Centers in the future.

111.    But for the Flyer Policy and Defendants' actions in removing such flyers and denying approval to place them on the indoor bulletin boards of the Academic Centers, Plaintiffs would post the Freedom Week Flyers, the Pro-Life Flyers, and flyers containing similar political and social messages, during the 2022 fall semester and beyond.

112.    The denial of constitutional rights is an irreparable injury *per se*, and Plaintiffs are entitled to declaratory and prospective injunctive relief against all Defendants in their official capacities.

113.    Plaintiffs are entitled to an award of monetary damages against all Defendants in their individual capacities in an amount to be determined at trial to compensate Plaintiffs for Defendants' violation of their rights under the U.S. Constitution. In the alternative, Plaintiffs are entitled to an award of nominal damages.

114.   Plaintiffs designed the Pro-Life Flyers themselves, and spent $5.00 printing 25 flyers, at $0.20 per color page, but Defendants refused to approve and stamp them for posting in Plaintiffs' intended venue, the Academic Centers, based on viewpoint.

115.   No reasonable public college administrator would deny students the right to hang flyers where other students are permitted to do so because of the political or social viewpoints the flyers express.

116.   Defendants knew or should have known, or recklessly disregarded, that their actions violated Plaintiffs' First Amendment rights.

117.   Plaintiffs are entitled to an award of punitive damages against Defendants in their individual capacities for their knowing and willful violation of Plaintiffs' rights under the U.S. Constitution.

## FIRST CAUSE OF ACTION
**Facial First Amendment Challenge to the Flyer Policy Under 42 U.S.C. § 1983**
**Prior Restraint**
**(Against all Defendants in their official capacities)**

118.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

119.   The Flyer Policy is facially unconstitutional under the First Amendment because it operates as a prior restraint on protected student expression.

120.   The Flyer Policy requires that all flyers created by students, groups, and clubs "must be approved and stamped by the Clovis Community College Student Center Staff" before posting. The Flyer Policy states that flyers "with unapproved (post approval) writing will be removed." Per the Flyer Policy, failure to obtain preapproval "will result in unapproved/unstamped flyers being removed and thrown away." These provisions create a permitting or licensing scheme requiring preapproval by Defendants before students may engage in protected speech by posting on the indoor bulletin boards of the Academic Centers.

121.   "[A]ny system of prior restraint comes to [the court] bearing a heavy presumption against its constitutional validity." *Epona v. Cnty. of Ventura*, 876 F.3d 1214, 1222 (9th Cir. 2017) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990)).

VERIFIED COMPLAINT                                    18
FOR CIVIL RIGHTS VIOLATIONS

122.    It is well settled that "an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint." *Id.* (quoting *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969)). "[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Id.* (quoting *Shuttlesworth*, 394 U.S. at 150–51).

123.    Prior restraints are presumptively unconstitutional and "avoid[] constitutional infirmity only if [they] take[] place under procedural safeguards designed to obviate the dangers of a censorship system." *Freedman v. State of Md.*, 380 U.S. 51, 58 (1965).

124.    The Flyer Policy contains none of the procedural safeguards necessary to rebut the presumption that it is an unconstitutional prior restraint, as required by *Freedman*. *Id.* at 58–59.

125.    As a direct and proximate result of Defendants' policies, Plaintiffs have suffered irreparable injury, including being deprived of their constitutional right to free expression.

126.    The denial of constitutional rights is an irreparable injury *per se*. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

127.    Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their First Amendment rights.

128.    Without declaratory and injunctive relief from this Court, Defendants' unconstitutional policy and actions will continue and Plaintiffs will suffer irreparable harm indefinitely.

## SECOND CAUSE OF ACTION
### Facial First Amendment Challenge to the Flyer Policy Under 42 U.S.C. § 1983
### Viewpoint Discrimination
### (Against all Defendants in their official capacities)

129.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

130.   The Flyer Policy is facially unconstitutional under the First Amendment because it bans speech that the government deems offensive.

131.   A public college cannot suppress student speech in a public forum because of the viewpoint that the speech expresses. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 836 (1995); *Widmar v. Vincent*, 454 U.S. 263, 277 (1981).

132.   A government regulation violates the First Amendment if it favors some viewpoints and discriminates against others, including those messages that the government deems offensive. *Matal v. Tam*, 137 S. Ct. 1744, 1757 (2017) (plurality). "[O]ffensive speech is, itself, a viewpoint and . . . the government engages in viewpoint discrimination when it suppresses speech on the ground that the speech offends." *American Freedom Def. Initiative v. King Cnty.*, 904 F.3d 1126, 1131 (9th Cir. 2018). Nor may the government prohibit speech on the basis that it violates notions of decency or propriety. *Papish v. Bd. of Curators of Univ. of Mo.,* 410 U.S. 667, 670 (1973) ("the mere dissemination of ideas—no matter how offensive to good taste—on a state university campus may not be shut off in the name alone of 'conventions of decency.'").

133.   Under the Flyer Policy, student flyers "with inappropriate or offens[ive] language or themes are not permitted and will not be approved."

134.   By prohibiting "inappropriate or offens[ive] language or themes," the Flyer Policy facially discriminates on the basis of viewpoint in a public forum.

135.   In a public forum, any restrictions on speech must also, at a minimum, be reasonable and viewpoint neutral. *See, e.g.*, *Minn. Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1885 (2018).

136.   In drawing a reasonable line, "the State must be able to articulate some sensible basis for distinguishing what may come in from what must stay out." *Id.* at 1888. In other words, the restriction must be "capable of reasoned application." *Id.* at 1892.

137.   The terms "inappropriate" and "offens[ive]" as included in the Flyer Policy are not facially viewpoint neutral.

138.   The terms "inappropriate" and "offens[ive]" are incapable of reasoned application and fail to articulate any "sensible basis for distinguishing what may come in from what must stay

out" and are therefore facially unreasonable. *See, e.g.*, *Ogilvie v. Gordon*, 540 F. Supp. 3d 920, 930–31 (N.D. Cal. 2020) (applying *Mansky*: "Because there is no objective, workable standard of what is 'offensive to good taste and decency,' different reviewers can reach opposing conclusions on whether a certain configuration should be rejected based on their judgment of what might be 'offensive' or not in 'good taste.'").

139.   As a direct and proximate result of Defendants' policies, Plaintiffs have suffered irreparable injury, including being deprived of their constitutional right to free expression.

140.   The denial of constitutional rights is an irreparable injury *per se*. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

141.   Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their First Amendment rights.

142.   Without declaratory and injunctive relief from this Court, Defendants' unconstitutional policy and actions will continue and Plaintiffs will suffer irreparable harm indefinitely.

## THIRD CAUSE OF ACTION
**Facial First Amendment Challenge to the Flyer Policy Under 42 U.S.C. § 1983 Overbreadth**
**(Against all Defendants in their official capacities)**

143.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

144.   A regulation violates the First Amendment for overbreadth if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quotations and citations omitted).

145.   The Flyer Policy is unconstitutional on its face because it results in a substantial number of unconstitutional applications, allowing the College and its administrators to deny or remove flyers like Plaintiffs' that are protected by the First Amendment but express viewpoints that the College wishes to suppress.

146.    For example, a ban on "offensive" speech could block student flyers that say "Blue Lives Matter" or "Black Lives Matter." It could block student flyers that carry Pride flags or flyers that exhort students to "Support Traditional Marriage." Any flyer that expresses a viewpoint on a matter of public concern or debate could be deemed offensive by adherents to the opposing view.

147.    The Flyer Policy has no legitimate sweep because it violates the Constitution on its face. But assuming it does have some legitimate sweep, its potential unconstitutional applications dwarf whatever that sweep is. The Flyer Policy not only makes unconstitutional a "substantial number" of its applications; that number is effectively limitless because it encompasses disfavored viewpoints on any political, social, or economic issue of public concern or debate.

148.    As a direct and proximate result of the Flyer Policy, students at Clovis Community College, including Plaintiffs, have suffered irreparable injuries, including being deprived of their constitutional right to free expression.

149.    Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing harm to their First Amendment rights.

150.    Without declaratory and injunctive relief from this Court, Defendants' unconstitutional policy and actions will continue and Plaintiffs will suffer irreparable harm indefinitely.

**FOURTH CAUSE OF ACTION**
**Facial Fourteenth Amendment Challenge to the Flyer Policy Under 42 U.S.C. § 1983**
**Vagueness**
**(Against all Defendants in their official capacities)**

151.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

152.    A regulation violates the Due Process Clause of the Fourteenth Amendment for vagueness if a person of ordinary intelligence cannot distinguish between permissible and prohibited conduct, and when there are no explicit standards to prevent arbitrary application. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

VERIFIED COMPLAINT                    22
FOR CIVIL RIGHTS VIOLATIONS

153.    A restriction on speech is void for vagueness if it fails to give "the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Id.*

154.    The terms "inappropriate or offens[ive] language or themes" in the Flyer Policy do not carry with them any reasonably objective plain meaning.

155.    The Flyer Policy is unconstitutionally vague because it does not provide any fair notice as to what speech is prohibited, and gives persons of ordinary intelligence no reasonable opportunity to know whether student flyers contain "inappropriate or offens[ive] language or themes."

156.    Additionally, a restriction on speech is void for vagueness when it fails to provide "explicit standards" to prevent "arbitrary and discriminatory enforcement" by administrators. *Id.* at 108–09.

157.    The Flyer Policy provides no standards to guide Defendants' application and therefore invites arbitrary and discriminatory enforcement in determining whether student flyers are "inappropriate" or "offens[ive]." It is therefore unconstitutional.

158.    For example, Specialist Stumpf was "on the fence about" approving the Freedom Week Flyers in November, 2021, but approved them. He admitted he previously approved those same flyers. He later suggested that the flyers should be removed—and should not have been approved in the first place—under the "inappropriate or offens[ive]" provision of the Flyer Policy. Defendants invented a pretextual, post-hoc justification for the removal—"if you need a reason, you can let [the students] know that [Vice President] Marco [De La Garza] and I agreed they aren't club announcements"—that does not appear in the text of the Flyer Policy and never has been a practice of Clovis Community College. This is not clear and consistent application of the Flyer Policy; it is arbitrary and discriminatory enforcement.

159.    As a direct and proximate result of Defendants' policies, Plaintiffs have suffered irreparable injury, including being deprived of their constitutional rights to free expression.

160.    The denial of constitutional rights is an irreparable injury *per se. Elrod*, 427 U.S. at 373.

161.     Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their Fourteenth Amendment rights.

162.     Without declaratory and injunctive relief from this Court, Defendants' unconstitutional actions will continue and Plaintiffs will suffer irreparable harm indefinitely.

### FIFTH CAUSE OF ACTION
**As-Applied First Amendment Challenge to the Flyer Policy Under 42 U.S.C. § 1983**
**Viewpoint Discrimination**
**(Against all Defendants in their official and individual capacities)**

163.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

164.     It is clearly established under the First Amendment that "[v]iewpoint discrimination is . . . an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829.

165.     It is also clearly established under the First Amendment that any restrictions on speech in a public forum, at a minimum, must be reasonable and viewpoint neutral. *See, e.g.*, *Mansky*, 138 S. Ct. at 1885.

166.     The terms "inappropriate" and "offens[ive]" as included in the Flyer Policy are not viewpoint neutral as applied to Plaintiffs' Freedom Week Flyers and Pro-Life Flyers. Defendants singled out Plaintiffs' flyers for disfavored treatment because the flyers express anti-communist and pro-life viewpoints that Defendants deemed offensive. As described above, bans on offensive speech are facially viewpoint discriminatory; they are also necessarily viewpoint discriminatory as applied to Plaintiffs' speech.

167.     Defendants failed to apply any "objective, workable standard" in determining whether Plaintiffs' Freedom Week Flyers and Pro-Life Flyers were "inappropriate" or "offens[ive]." *See, e.g.*, *Ogilvie*, 540 F. Supp. 3d at 930–31 (applying *Mansky*).

168.     By removing the Freedom Week Flyers, and denying Plaintiffs the use of indoor bulletin boards for the Pro-Life Flyers, because the content of the flyers was "inappropriate" or "offens[ive]," Defendants discriminated on the basis of viewpoint and deprived Plaintiffs of

access to a limited public forum that remains open to other students' viewpoints at Clovis Community College.

169.    That others may have been "uncomfortable" with the Freedom Week Flyers does not create a constitutionally defensible reason for Defendants to remove Plaintiffs' protected speech from the bulletin boards of the Academic Centers.

170.    Likewise, that one person allegedly threatened to "file a harassment claim" does not create a constitutionally defensible reason for Defendants to remove the Freedom Week Flyers, which do not contain content that rises to the level of harassment. In *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999), the U.S. Supreme Court held that speech rises to the level of harassment only if it is "so severe, pervasive, and objectionably offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities."

171.    Defendants gave effect to a heckler's veto by ordering the removal of the Freedom Week Flyers because of the hostile reactions of others who viewed them. *See, e.g.*, *Brown v. Louisiana*, 383 U.S. 131, 133 n.1 (1966) (recognizing that the state must not allow a heckler's veto to strip peaceful speakers of their speech rights).

172.    Each Defendant was directly involved in an unconstitutional course of conduct. President Bennett ordered the removal of the Freedom Week Flyers, and fabricated the pretext that they had to be removed because they did not contain club announcements, in consultation and agreement with Vice President De La Garza. President Bennett directed Dean Hébert to remove the Freedom Week Flyers, telling her "if you need a reason you can let [the students] know that [Vice President] Marco [De La Garza] and I agreed they aren't club announcements." Dean Hébert in turn ordered Specialist Stumpf to remove them.

173.    Specialist Stumpf identified the provision in the Flyer Policy prohibiting "inappropriate or offens[ive] language or themes," determined he should have rejected the Freedom Week Flyers on that viewpoint-discriminatory basis, and ultimately directed student workers to remove the flyers, on President Bennett's, Vice President De La Garza's, and Dean Hébert's orders.

174.   Dean Hébert then used the pretextual justification created by President Bennett to banish Plaintiffs' Pro-Life Flyers to the "Free Speech Kiosk" and to hide her viewpoint discriminatory purpose for doing so. She thereby denied Plaintiffs access to the limited public forum of the indoor bulletin boards that remained open to their peers to express approved viewpoints. Understanding that President Bennett's justification was pretextual, Dean Hébert directed Stumpf to keep President Bennett's email ordering the removal a secret. Dean Hébert understood that the flyers "need to come down per administration"—in other words, not per the terms of the Flyer Policy.

175.   The denial of constitutional rights is an irreparable injury *per se*. *Elrod*, 427 U.S. at 373.

176.   As a direct and proximate result of Defendants' policies and actions, Plaintiffs have suffered and continue to suffer irreparable injury, including being deprived of their constitutional rights to free expression. Plaintiffs are entitled to prospective injunctive relief against all Defendants in their official capacities.

177.   No reasonable public college administrator would deny students the right to hang flyers where other students are permitted to do so because of the political or social viewpoints the flyers express.

178.   The right to be free from viewpoint discrimination in a limited public forum, including bulletin boards open to student use, on campus is so clearly established that the California State Assembly codified it in 1977. *See* California Education Code § 76120.

179.   Defendants knew or should have known, or recklessly disregarded, that their actions violated Plaintiffs' First Amendment rights. Plaintiffs are entitled to monetary damages, including punitive damages, against all Defendants in their individual capacities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Alejandro Flores, Daniel Flores, Juliette Colunga and YAF-Clovis respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendants and issue the following forms of relief:

A.     Declaratory relief against all Defendants declaring that:

1. Clovis Community College's Flyer Policy is unconstitutional on its face under the First and Fourteenth Amendments to the Constitution of the United States;

2. Defendants' actions in removing the Freedom Week Flyers from the indoor bulletin boards of the Academic Centers and denying approval of the Pro-Life Flyers to be posted constituted unconstitutional viewpoint discrimination and caused Plaintiffs irreparable harm;

B. Preliminary injunctive relief against all Defendants prospectively enjoining enforcement of the Flyer Policy during the pendency of this litigation;

C. Permanent injunctive relief against all Defendants prospectively enjoining enforcement of the Flyer Policy;

D. An award of monetary damages against all Defendants in an amount to be determined at trial to compensate Plaintiffs for Defendants' past violations of Plaintiffs' rights under the U.S. Constitution. In the alternative, an award of nominal damages against Defendants for violating Plaintiffs' rights under the U.S. Constitution. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021);

E. An award of punitive damages against Defendants for their knowing and willful violation of Plaintiffs' rights under the U.S. Constitution;

F. An award of attorneys' fees and costs under 42 U.S.C. § 1988 and other applicable law; and

G. All other further legal and equitable relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

In compliance with Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury on all issues so triable.

DATED: August 11, 2022

Respectfully submitted,

/s/ Daniel M. Ortner
DANIEL M. ORTNER (California State Bar No. 329866)
555 Capitol Mall, Suite 1290
Sacramento, CA 95814

Telephone: (916) 419-7111
Facsimile: (916) 419-7747
dortner@pacificlegal.org

GABRIEL Z. WALTERS (District of Columbia Bar No. 1019272)*
gabe.walters@thefire.org
JEFFREY D. ZEMAN (Pennsylvania Bar No. 328570)*
jeff.zeman@thefire.org
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Telephone: (215) 717-3473
Facsimile: (215) 717-3440

*Attorneys for Plaintiffs*
**Pro Hac Vice* Motions Forthcoming*

1
## VERIFICATION

2
     I, ALEJANDRO FLORES, declare as follows:

3
     1.    I am a student at Clovis Community College.

4
     2.    I am the founding President of Clovis's student chapter of Young Americans for

5
Freedom.

6
     3.    I have reviewed this Complaint.

7
     4.    For the allegations within my personal knowledge, I believe them all to be true.

8
     5.    For the allegations not within my personal knowledge, I believe them all to be true

9
based on my review of the cited policies and documents.

10
     6.    I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing

11
is true and correct to the best of my knowledge.

12
Executed on August 11, 2022

13

14
     */s/ Alejandro Flores* (original signature retained by attorney Jeffrey D. Zeman)

15
                            ALEJANDRO FLORES,

16
                                Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT        29
FOR CIVIL RIGHTS VIOLATIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

I, DANIEL FLORES, declare as follows:

1.     I am a student at Clovis Community College.

2.     I am a member of Clovis's student chapter of Young Americans for Freedom.

3.     I have reviewed this Complaint.

4.     For the allegations within my personal knowledge, I believe them all to be true.

5.     For the allegations not within my personal knowledge, I believe them all to be true based on my review of the cited policies and documents.

6.     I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed on August 11, 2022

_/s/ Daniel Flores_ (original signature retained by attorney Jeffrey D. Zeman)

DANIEL FLORES,

Plaintiff

VERIFIED COMPLAINT
FOR CIVIL RIGHTS VIOLATIONS

30

**VERIFICATION**

I, JULIETTE COLUNGA, declare as follows:

1.      I am a student at Clovis Community College.

2.      I am a member of Clovis's student chapter of Young Americans for Freedom.

3.      I have reviewed this Complaint.

4.      For the allegations within my personal knowledge, I believe them all to be true.

5.      For the allegations not within my personal knowledge, I believe them all to be true based on my review of the cited policies and documents.

6.      I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed on August 11, 2022

*/s/ Juliette Colunga* (original signature retained by attorney Jeffrey D. Zeman)

JULIETTE COLUNGA,

Plaintiff